IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ROY G. BLAND,
    Petitioner,

vs.                                         Case No.: 3:06cv277/RV/EMT

JAMES R. McDONOUGH,
    Respondent.
_____/

## REPORT AND RECOMMENDATION

       This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1). Respondent filed a response and relevant portions of the state court record (Doc. 12). Petitioner filed a reply (Doc. 18).

       The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

       The procedural background of this case is undisputed by the parties and established by the state court record. Petitioner is a Florida state inmate who is currently serving a term of incarceration for violation of probation. Petitioner was originally convicted in July of 2001, in the Circuit Court for Escambia County, Florida, Case Nos. 99-4484-CF and 00-1256-CF, of one count of sale, delivery, or possession with intent to sell or deliver crack cocaine, one count of possession of less than twenty grams of marijuana, one count of possession of cocaine, one count of possession

of greater than twenty grams of marijuana, and one count of possession of drug paraphernalia (Doc. 12, Ex. A at 39, 43–44). On July 20, 2001, he was sentenced to time served on the possession of less than twenty grams of marijuana count and the possession of drug paraphernalia count (*id.* at 39). As to the remaining counts, he was sentenced to concurrent terms of three (3) years of probation and concurrent terms of five (5) years of incarceration suspended (*id.* at 43–44).

On April 26, 2004 a violator warrant was issued for Petitioner's arrest (Doc. 12, Ex. A at 49). Following a hearing on June 10, 2004, Petitioner was found guilty of violating the terms of his probation (*see id.* at 52–97). He was sentenced the same day to three concurrent terms of five years of incarceration with pre-sentence jail credit of 364 days (*id.* at 94–97, 106–11). Petitioner appealed his conviction and sentence to the Florida First District Court of Appeal (First DCA). The appellate court affirmed the conviction and sentence in a written opinion issued on March 4, 2005 (*id.*, Ex. E). Bland v. State, 896 So. 2d 937 (Fla. 1st DCA Mar. 4, 2005). Petitioner filed an untimely ("belated") notice to invoke discretionary jurisdiction in the Florida Supreme Court (*id.*, Ex. G at 1). On September 23, 2005, the supreme court dismissed the notice as untimely (*id.* at 2). Bland v. State, 919 So. 2d 434 (Fla. Sept. 23, 2005). Petitioner then filed a motion to reinstate the appeal, but the supreme court denied the motion on December 21, 2005 (*id.* at 3–12).

On May 3, 2005, Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Doc. 12, Ex. H at 1–6). The trial court denied the motion without an evidentiary hearing (*id.* at 7–10). Petitioner appealed the decision to the First DCA. The appellate court affirmed per curiam without written opinion on March 13, 2006, with the mandate issuing May 26, 2006 (*id.*, Exs. J, L). Bland v. State, 928 So. 2d 338 (Fla. 1st DCA Mar. 13, 2006) (Table).

On June 20, 2006, Petitioner filed the instant habeas petition (Doc. 1 at 6). Respondent concedes that the petition was timely filed and that the claims raised therein have been exhausted in the state courts (Doc. 12 at 12, 14, 16).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States." As

the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for federal habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub. L. 104-132, § 104, 110 Stat. 1214, 1218–19.

Section 2254 now provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (West Supp. 2001).

The United States Supreme Court explained the framework of review under § 2254(d)(1) in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[1] The appropriate test in habeas cases was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing

---

[1] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99, 120 S. Ct. at 1499–1503, 1511–16); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13, 120 S. Ct. at 1518–23). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Case No: 3:06cv277/RV/EMT

>legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13; Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).

The Eleventh Circuit has developed a three-step process for applying the Williams test to any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding. *See* Wellington v. Moore, 314 F.3d 1256, 1260–61 (11th Cir. 2002); Robinson v. Moore, 300 F.3d 1320, 1343–45 (11th Cir. 2002). First, the court must ascertain the controlling legal principles that are clearly established by the Supreme Court at the time of the state court adjudication. Wellington, 314 F.3d at 1260; Robinson, 300 F.3d at 1343. Second, the court must determine whether the state court adjudication was contrary to the clearly established Supreme Court law. Wellington, 314 F.3d at 1260, Robinson, 300 F.3d at 1344. "The 'contrary to' clause in § 2254(d)(1) 'suggests that the state court's decision must be substantially different' from the relevant Supreme Court precedent." Wellington, 314 F.3d at 1260 (quoting Fugate v. Head, 261 F.3d 1206, 1216 (11th Cir. 2001), *cert. denied*, 535 U.S. 1104, 122 S. Ct. 2310, 152 L. Ed. 2d 1065 (2002) (quoting Williams, 529 U.S. at 405)). "Although a state court's decision that 'applies a rule that contradicts' the governing Supreme Court law is 'contrary,' a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." Wellington, 314 F.3d at 1260 (citing and quoting Williams, 529 U.S. at 404–06). If the state court applied the correct Supreme Court precedent, and the United States Supreme Court, faced with materially indistinguishable facts, has not reached a decision different from the decision reached by the state court in the petitioner's case, the case does not fit within the "contrary to" clause, and the federal habeas court must proceed to the third step and determine whether the state court "unreasonably applied the relevant Supreme Court authority." Fugate, 261 F.3d at 1216. Likewise, if the facts of the Supreme Court cases and the petitioner's case are <u>not</u> substantially similar, "a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." *Id.* (citing and quoting

Williams, 529 U.S. at 406). A state court is not required to cite Supreme Court cases or even be aware of the cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002).

The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 410. The Supreme Court has explained that "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" Bell v. Cone, 535 U.S. 685, 122 S. Ct. 1843, 1850, 152 L. Ed. 2d 914 (2002) (quoting Williams, 529 U.S. at 411). Indeed, "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 123 S. Ct. 1166, 1175, 155 L. Ed. 2d 144 (2003). A state court's incorrect application of clearly established law will be held to be reasonable and not warrant a writ unless "thorough analysis by a federal court produces a firm conviction that [the state court] judgment is infected by constitutional error." Williams, 529 U.S. at 389. "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." Yarborough v. Alvarado, 541 U.S. 652, 124 S. Ct. 2140, 2149, 158 L. Ed. 2d 938 (2004) (citation omitted). Although § 2254(d)(1) is concerned only with federal law as clearly established by the Supreme Court, this court may look to circuit precedent to demonstrate reasonable applications of Supreme Court precedent. Van Poyck v. Fla. Dep't of Corrections, 290 F.3d 1318, 1322 n.4 (11th Cir. 2002).

In deciding whether a state court decision involved "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" under § 2254(d)(2), determinations of fact are "presumed to be correct," unless the presumption is rebutted by Petitioner "by clear and convincing evidence." § 2254(e)(1); see Miller-El v. Cockrell, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-

court proceeding, § 2254(d)(2).") (dictum); Fugate, 261 F.3d at 1215 (quoting 28 U.S.C. § 2254(e)(1)); Parker v. Head, 244 F.3d 831, 835–36 (11th Cir. 2001) (citing § 2254(d)(2) and (e)(1)); *see also* Crawford v. Head, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides a "highly deferential standard of review" of the state court's factual determinations). Thus, not only must the state court's factual determination have been unreasonable, but the court's factual findings must be shown unreasonable by clear and convincing evidence. *See* Callahan v. Campbell, 427 F.3d 897, 926 (11th Cir. 2005) (citing § 2254(e)(1); Rutherford v. Crosby, 385 F.3d 1300, 1308 (11th Cir. 2004) ("[Petitioner] has not shown by clear and convincing evidence that the Florida Supreme Court's factual finding . . . [wa]s unreasonable in light of the evidence in the state court record.")).

Within this framework, the court will review Petitioner's claims.

### III. PETITIONER'S CLAIMS

#### A. Ground one: "Denial of Due Process of Law by State Court for Failure to Conduct Evidentiary Hearing"

(Doc. 1 at 4). Petitioner claims that the state court violated his due process rights by denying his Rule 3.850 motion without conducting an evidentiary hearing (Doc. 1, supporting memorandum at 2–4). In his Rule 3.850 motion, Petitioner raised one claim of ineffective assistance of counsel, namely, that his counsel performed ineffectively by failing to call three witnesses, Ms. Lambert, Ms. Hodges, and Mr. Hodges (Doc. 12, Ex. H at 3). Petitioner contends the state court denied him due process by determining that he was not prejudiced by counsel's error without holding an evidentiary hearing (Doc. 1, supporting memorandum at 4). Petitioner additionally appears to claim that he was denied the opportunity to present witnesses at the probation revocation hearing (*id.* at 5).

##### 1. Failure to Conduct Post-conviction Evidentiary Hearing

Respondent contends this claim is not cognizable in a federal habeas proceeding because the claim is not an attack on the detention itself; rather, it is an attack on a proceeding collateral to the detention (Doc. 12 at 14–15).

Respondent is correct that the instant claim is not cognizable on federal habeas review. The Supreme Court has indicated that the Constitution does not require that states provide post-conviction review or any other collateral proceedings beyond direct appeal. *See* Murray v. Giarratano, 492 U.S. 1, 10, 109 S. Ct. 2765, 2770, 106 L. Ed. 2d 1 (1989); Pennsylvania v. Finley,

481 U.S. 551, 557, 107 S. Ct. 1990, 1994, 95 L. Ed. 2d 539 (1987); United States v. MacCollom, 426 U.S. 317, 322, 96 S. Ct. 2086, 2090, 48 L. Ed. 2d 666 (1976). Correspondingly, the Eleventh Circuit has ruled that errors in the process or substance of state court collateral proceedings are not cognizable on federal habeas review. See Quince v. Crosby, 360 F.3d 1260, 1261–62 (11th Cir. 2004) (citing Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987) (concluding § 2254 claim that petitioner's due process rights were violated when state post-conviction court held no evidentiary hearing and failed to attach appropriate portions of record to its opinion "goes to issues unrelated to the cause of petitioner's detention [and] does not state a basis for habeas relief")). Therefore, Petitioner is not entitled to federal habeas relief on his claim of alleged state court error in failing to hold an evidentiary hearing in the Rule 3.850 proceeding.

    2.  Ineffective Assistance of Counsel at Revocation Hearing

The undersigned liberally construes the petition as challenging the state court's decision denying Petitioner's ineffective assistance of counsel claim that he raised in his Rule 3.850 motion. In his Rule 3.850 motion, Petitioner claimed that his counsel performed ineffectively by failing to call three witnesses on his behalf. Petitioner asserted that if his counsel had called Ms. Lambert, Ms. Hodges, and Mr. Hodges as witnesses, they would have testified as follows: (1) Ms. Lambert and Ms. Hodges would have admitted ownership of the contraband and paraphernalia found in the motel room, (2) the three witnesses would have testified that Petitioner was not present when the females smoked crack prior to the arrival of the police, (3) the three would have testified that the contraband was hidden from Petitioner's view, (4) Ms. Lambert and Ms. Hodges would have testified that they had known Petitioner for years, but he had no knowledge of their drug addiction, (5) Ms. Lambert would have testified that the police removed the paraphernalia from her purse and the drawer, (6) Ms. Lambert would have testified that she hid the crack pipe in the tissue roll in the bathroom before Petitioner returned to the hotel room, and (7) Mr. Hodges would have testified that Petitioner rented the room at his request, and he refunded Petitioner for the cost of the room (Doc. 12, Ex. H at 4–5).

    a.  <u>Clearly established federal law</u>

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To obtain relief

under Strickland, a petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. 466 U.S. at 687–88. It is the petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable and that he suffered prejudice as a result thereof. *Id.* at 687. If a petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

> In determining whether counsel's performance was reasonable, the Court instructed:
>
> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. *Cf.* Engle v. Isaac, 456 U.S. 107, 133–134, 102 S. Ct. 1558, 1574-1575, 71 L. Ed. 2d 783 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *See* Michel v. Louisiana, *supra*, 350 U.S. at 101, 76 S. Ct. at 164.

Strickland, 466 U.S. at 689.

As to the prejudice prong of the Strickland, the Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" Strickland, 466 U.S. at 693. However, the Court has also clarified that a petitioner need not demonstrate it 'more likely than not, or prove by a preponderance of evidence,' that counsel's errors affected the outcome. Strickland, 466 U.S. at 693–94. Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694. Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence. Williams v. Taylor, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors. . . . [T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.

*Id.* at 695–96.

### b. Federal review of state court decision

The state court's written opinion identified the Strickland standard as applicable for evaluating claims of ineffective assistance of counsel (Doc. 12, Ex. H at 7). Therefore, Petitioner is entitled to federal relief only if he demonstrates that the state court decision was based upon an unreasonable determination of the facts or that the state court decision was an unreasonable application of Strickland.

In its written opinion, the state court made the following factual findings:

> In the instant case, the Defendant was accused of violating condition nine of his probation by associating with persons engaged in criminal activity. At his contested violation of probation hearing,[FN 1] the State called two officers who testified that 1) the Defendant procured the hotel room in which the criminal activity had taken place, 2) there were two female[s] and one male in the hotel room in the main sleeping area of the room when the police arrived, 3) the Defendant was in the bathroom at the time the police arrived, 4) after receiving permission to search the room, the officers found a small quantity of marijuana, rolling papers that were on a table in plain view, scales and a small plastic container (both with cocaine residue) in a dresser drawer, and a crack pipe (with cocaine residue) hidden in an unused

> toilet paper roll in the bathroom, 5) the two females claimed ownership of all the items in question, and 6) Ms. Lambert stated that just prior to the police knocking on the door "they'd been smoking crack."
>
> The defense only called one witness, the Defendant. The Defendant testified that: 1) he rented the room for Mr. Hodges, and used cash given to him by Mr. Hodges to pay for the room, 2) he lived three blocks from the hotel, 3) after procuring the room, the Defendant left for some time and had just returned prior to the police officer's arrival; 4) he did not smell the presence of narcotics when he returned, 5) the small plastic container and rolling papers were not found where the officers described, but were actually found in Ms. Lambert's purse, 6) he was completely unaware of the crack pipe hidden in the unused and wrapped toilet paper roll, and 7) the police also searched his car and found nothing of consequence.

(Doc. 12, Ex. H at 8–9) (footnote omitted). Based upon these factual findings and considering Petitioner's allegations as to the substance of the testimony of the three witnesses if they had been called, the state court concluded that even in light of the omitted testimony, the overwhelming weight of the evidence demonstrated that Petitioner knowingly violated his probation because the following remaining evidence "easily and substantially surpasses the preponderance of the evidence standard:" (1) Petitioner rented the room in which the criminal activity occurred; (2) at least two of the items, namely, the scales and the crack pipe, were found in the room and not Ms. Lambert's purse; (3) Petitioner occupied the room at least some of the time with the other occupants, and (4) at least two of the occupants were engaged in criminal activity in the room at some time (*id*. at 9). Therefore, the court concluded that Petitioner failed to show a reasonable probability that the result of the revocation hearing would have been different if the three witnesses had testified (*id*.).

Petitioner has failed to rebut the state court's factual findings with clear and convincing evidence; therefore, the factual findings are presumed correct. Thus, Petitioner is entitled to relief only if he establishes that the state court's decision was an unreasonable application of <u>Strickland</u>.

Initially, Petitioner has offered nothing but his own speculation as to the substance of Ms. Lambert's, Ms. Hodges' and Mr. Hodges' testimony and their availability to testify at the revocation hearing. He provided no factual support, in the form of affidavits or otherwise, to support his assertions regarding the witnesses' availability and what they would have said. Additionally, based upon the state court's factual findings as to the evidence that was adduced at the revocation hearing, Petitioner has failed to show a reasonable probability that the result of the revocation hearing would

have been different if the three witnesses had testified. Under Florida law, the trial court "has broad discretion to determine whether there has been a willful and substantial violation of a term of probation and whether such a violation has been demonstrated by the greater weight of the evidence." State v. Carter, 835 So. 2d 259, 262 (Fla. 2002); *see also* Burgin v. State, 623 So. 2d 575, 576 (Fla. 1st DCA 1993) ("A trial court is vested with broad discretion in determining whether a probationer has violated a condition of the probation."). Applying this standard to the evidence adduced at the revocation hearing and the omitted evidence proffered by Petitioner, the facts would have remained that Petitioner rented the room in which the criminal activity occurred, drug paraphernalia was found in the room, Petitioner occupied the room at least some of the time with the other occupants, and at least two of the occupants were engaged in criminal activity in the room at some time. In light of these facts, the state court did not unreasonably apply Strickland in concluding that Petitioner failed to show a reasonable probability that if the omitted testimony had been presented, the trial court would have concluded that the greater weight of the evidence did not demonstrate that Petitioner wilfully and substantially violated the term of his probation prohibiting him from associating with persons engaged in criminal activity. Therefore, Petitioner is not entitled to federal habeas relief on his claim of ineffective assistance of counsel.

   3.  Denial of Due Process at Revocation Hearing

In Petitioner's supporting memorandum, he appears to assert a claim that he was not provided due process at the revocation hearing because he was not able to present witnesses on his behalf (Doc. 1, supporting memorandum at 5). This claim is without merit.[2] In Morrissey v. Brewer, the Supreme Court set forth the "minimum requirements of due process" applicable to parole revocation proceedings, including:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written

---

[2]The court may deny an application for writ of habeas corpus on the merits notwithstanding Petitioner's failure to exhaust his state court remedies. 28 U.S.C. § 2254(b)(2).

Case No: 3:06cv277/RV/EMT

>statement by the factfinders as to the evidence relied on and reasons for revoking parole.

408 U.S. 471, 489, 92 S. Ct. 2593, 2604, 33 L. Ed. 2d 484 (1972). The Court emphasized, "there is no thought to equate [the revocation hearing] to a criminal prosecution in any sense. . . . [T]he process should be flexible enough to consider evidence . . . that would not be admissible in an adversary criminal trial." *Id.* Indeed, all that is required is "an informal hearing structured to assure that the finding of a[n] [early release] violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the [releasee's] behavior." *Id.* In Gagnon v. Scarpelli, 411 U.S. 778, 93 S. Ct. 1756, 36 L. Ed.2 d 656 (1973), the Supreme Court concluded that the procedures outlined in Morrissey for parole revocation should also apply to probation proceedings. 411 U.S. at 782.

In the instant case, Petitioner does not allege that he did not receive written notice of the claimed probation violation, disclosure of the evidence against him, the opportunity to be heard in person and to present documentary evidence, the right to confront and cross-examine adverse witnesses, a "neutral and detached" hearing officer, and a written statement by the factfinder as to the evidence relied on and reasons for revoking probation. Although he alleges he was denied the opportunity to present witnesses by virtue of his counsel's failure to call Ms. Lambert, Ms. Hodges, and Mr. Hodges as witnesses, this is a challenge to counsel's performance and not the process itself. Petitioner does not allege that the trial court in any way limited his opportunity to call witnesses at the revocation hearing. Therefore, Petitioner has failed to demonstrate a due process violation.

>B.    Ground two: "Petitioner was Predicated [sic] Guilty by Hearsay Evidence Associating with Someone in Criminal Activity by Hearsay Evidence"

(Doc. 1 at 4). Petitioner asserts that the State presented hearsay statements of Ms. Lambert and Ms. Hodges through the testimony of the officers, and this hearsay evidence cannot be the sole basis for revocation (Doc. 1, supporting memorandum at 5). Petitioner additionally contends that the State failed to produce competent evidence to prove that he knowingly associated with persons engaged in criminal activity (*id*. at 5).

Respondent concedes that Petitioner exhausted this claim.

>1.    Clearly Established Federal Law

As previously discussed, criminal defendants involved in probation revocation hearings are entitled to certain minimal due process protections. Gagnon, 411 U.S. at 782, 786. Among these minimal protections is the right to confront and cross-examine adverse witnesses. *Id.* However, the admission of hearsay as substantive evidence at probation revocation hearings is not per se unconstitutional. Morrissey, 408 U.S. at 489. The Supreme Court has emphasized that at such proceedings a court "should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." Morrissey, 408 U.S. at 489; Gagnon, 411 U.S. at 781–82 and n.5.

      2      Federal Review of State Court Decision

As previously noted, Petitioner's revocation hearing occurred on June 10, 2004, at which the Honorable Frank L. Bell, Circuit Judge, presided (Doc. 12, Ex. A at 52–97). Petitioner was represented by counsel (*id.*). During the course of the hearing, the State produced testimony from two law enforcement officers and the custodian of records for Petitioner's probation (*id.* at 54–72). The records custodian testified that the Petitioner had been instructed on each condition of his probation, including condition nine (9), the condition he was accused of violating (*id.* at 69–70). Officer Bruce Harris testified that on February 28, 2004, he was working as a patrol officer and was called to the Days Inn regarding possible narcotics activity (*id.* at 55). Officer Harris went straight to Petitioner's room where he had been told the narcotics activity was occurring. (*id.* at 56). The officer knocked on the door, and Mr. Hodges allowed him to enter the hotel room, which was about thirty feet by ten feet in size (*id.*). Officer Harris saw two white females and one black male when he entered the room (*id.* at 57). Petitioner was in the bathroom when the officer entered the room (*id.*). Petitioner admitted that the room was registered to him, and he consented to a search of the room (*id.*). Officer Harris found a crack pipe with cocaine residue in a toilet paper roll on the back of the toilet in the bathroom where Petitioner had been, some scales and a small plastic container with cocaine residue on it in a dresser drawer in the room, and a package of rolling papers in plain view on a table in the room (*id.* at 57–58, 60–61). The two females admitted to ownership of the items (*id.* at 58–59). One of the females admitted that "they" had been smoking crack cocaine prior to the officer's arrival, but the officer interpreted her statement as stating that <u>she</u> had been smoking

crack (*id.* at 58–59, 61–62).  Officer Harris testified that Petitioner did not claim ownership of any of the paraphernalia (*id.* at 59).

Officer Henry Wells testified that he arrived at the hotel as Officer Harris knocked on the hotel room door (*id.* at 63-64).  Officer Wells testified that the officers were invited into the hotel room and given permission to search the room (*id.* at 64).  Officer Wells testified specifically that the rolling papers were found in plain view (*id.* at 65). Officer Wells testified that the other items were visible as the dresser drawer was opened (*id.* at 65).  Officer Wells testified that when he entered the room, he did not detect the odor of crack cocaine being smoked (*id.* at 66).

Petitioner offered testimony contrary to that of the officers (*id.* at 73–90).  Petitioner testified that the small container with cocaine residue and the rolling papers were found in one of the female's purse, not in the drawer or on a table (*id.* at 74, 76).  Petitioner also testified that he had entered the room about 5–10 minutes prior to the officers' arrival and had gone straight to the bathroom (*id.* at 76–77).  He testified that he did not know that the three other occupants were engaging in criminal activity (*id.* at 77).

At the conclusion of the hearing, the trial court found as follows:

> I make a finding of fact that Petitioner knowingly associated with persons engaged in criminal activity, and I find it to a greater weight than preponderance and to the weight of beyond a reasonable doubt in that he did associate with Laura Lambert and Winifred Hodges, who were engaged in criminal activity, and I find him guilty of violating his probation.

(*id.* at 93–94).

On direct appeal of the probation revocation Petitioner argued that the trial court abused its discretion by concluding that he willfully and substantially violated his probation because there was no preponderance of the evidence presented by which the court could have concluded that Petitioner knowingly associated with persons engaged in criminal activity (Doc. 12, Ex. B at 9).  Petitioner argued that rolling papers in plain view, without more, was insufficient to constitute illegal drug paraphernalia (*id.* at 9).  Furthermore, the crack pipe in the toilet paper roll and the paraphernalia in the drawer in a jointly occupied room were insufficient to prove Petitioner's knowledge of these items or that illegal activity was occurring while he was in the bathroom (*id.*).  Therefore, the

preponderance of the evidence did not show that Petitioner knew that the other occupants were engaged in criminal activity (*id.*).

In the written opinion affirming the trial court's decision, the appellate court cited the Florida standard of proof for probation revocations, namely, the State must show a willful violation supported by a preponderance of the evidence (Doc. 12, Ex. E at 2–3) (citing Cowart v. State, 754 So. 2d 813, 814 (Fla. 1st DCA 2000)). The appellate court also cited the standard of review of probation revocation orders, that they are reviewed only for abuse of discretion (*id.* at 3) (citing Van Wagner v. State, 677 So. 2d 314, 317 (Fla. 1st DCA 1996)). Upon review of the record, the appellate court concluded that the trial court did not abuse its discretion in concluding that Petitioner violated the condition at issue, and this conclusion was based on competent testimony presented at trial (*id.*). The appellate court additionally noted that under Florida law, a single incident of associating with persons engaged in criminal activity is enough to amount to a willful and substantial violation (*id.*) (citing State v. Carter, 835 So. 2d 259 (Fla. 2002)).

The state court's use of a preponderance-of-the-evidence standard was not contrary to Supreme Court law. Taylor, 931 F.2d at 848 (the minimal due process protections which attach to probation revocation proceedings do not place upon the prosecutor the burden of proving beyond a reasonable doubt that the defendant committed the alleged acts; rather, the court can revoke a probationary sentence when it is reasonably satisfied that the "conduct of the probationer has not been as good as required by the conditions of probation"); *see also* United States v. Penn, 721 F.2d 762 (11th Cir. 1983). Indeed, to obtain a reversal of a revocation order, a defendant must present clear evidence that the trial court abused its discretion in finding the violation. Penn, *supra*; United States v. Rice, 671 F.2d 455, 458 (11th Cir. 1982).

Because the state court utilized the correct legal principles in analyzing Petitioner's claim, Petitioner is entitled to relief only if he demonstrates that the state court's decision was unreasonable. Upon review of the record, the undersigned concludes that Petitioner has failed to do so. The properly considered evidence overwhelmingly demonstrated that Petitioner violated the condition of his probation. Initially, as to the hearsay statements, Petitioner does not allege that either of the hearsay statements of the two females, namely, that they were the owners of the paraphernalia and that one of the females had been smoking crack cocaine prior to the officer's

arrival, was materially false or unreliable.[3]  Therefore, the state court's reliance on this testimony did not violate due process.  *See* United States v. Taylor, 931 F.2d 842, 847 (11th Cir. 1991) (before the admission of hearsay evidence would be found to have violated due process, the defendant must show (1) that the challenged evidence was materially false or unreliable, and (2) that it actually served as the basis for the revocation).  Furthermore, the fact that the evidence against Petitioner was circumstantial in that there was no evidence Petitioner was actually present when the other occupants of the motel room were smoking crack does not render it insufficient to base a conviction upon.  The observations of the officers, Petitioner's admission that the room was registered to him, and the statements of Ms. Lambert and Ms. Hodges to the officers, constituted sufficient evidence for the state court to find a violation of probation.  The state court did not violate Petitioner's rights to confrontation or to fundamental fairness by considering the hearsay evidence or by not having sufficient evidence to be reasonably satisfied that Petitioner committed the violation of the condition of his probation.  Therefore, Petitioner has failed to demonstrate that the state court unreasonably applied the principle of Morrissey in denying his due process claim.  Accordingly, Petitioner is not entitled to federal habeas relief.

For the aforementioned reasons, it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

At Pensacola, Florida, this 27th day of June 2007.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

---

[3]Petitioner argues that Officer Harris' testimony that one of the females stated that "they" were smoking crack prior to the officers' arrival was false because it suggested that he was smoking crack, but Officer Harris subsequently clarified his testimony by stating that he understood the female to say that she herself had been smoking.

## **NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**